IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

KELLY ISHAM                                                                                              PLAINTIFF

v.                                              Case No. 2:14-CV-02018

BOONEVILLE COMMUNITY HOSPITAL;
TERRI LYNETTE JONES; and
SAHIBZADA AZIZUDDIN AHMED, M.D.                                                      DEFENDANTS

**OPINION AND ORDER**

Before the Court are Defendant Sahibzada Azizuddin Ahmed's motion for summary judgment and supplement thereto (Doc. 103, 167), Defendant Booneville Community Hospital's ("BCH") motion for summary judgment (Doc. 129), Ahmed's motion to bifurcate proceedings on punitive damages (Doc. 168), Plaintiff Kelly Isham's responses (Docs. 124, 147), the defendants' respective replies (Docs. 143 and 154), and the parties' supporting documents.[1]  The Court will address each motion in turn.[2]

**I.      Background**

Isham was diagnosed at the age of fifteen with Ewing Sarcoma, a rare form of cancer that affected her jaw at the right mandible.  Over the following years, Isham received treatment in the form of, inter alia, chemotherapy, reconstructive surgeries, and titanium implants.  Isham eventually began working as a surgical scrub technician in an operating room at BCH.  Isham's supervisor was separate defendant Jones.

---

[1] Ahmed also seeks to adopt BCH's motion for summary judgment and reply brief to the extent certain arguments pertain to each defendant equally. (Docs. 140 and 157). The Court has considered BCH's and Ahmed's filings accordingly.

[2] Separate defendant Terri Lynette Jones has purportedly agreed to settle the claims against her. At the time of this writing, the parties are still finalizing a formal agreement. Therefore, the Court has withheld consideration of Jones's pending motion for partial summary judgment (Doc. 131) and Jones's motion to adopt (Doc. 134) BCH's motion for summary judgment.

Throughout Isham's employment, she became close friends with Jones. In September 2009, Isham and Jones were engaged in conversation when Isham complained of symptoms she was experiencing, including chronic headaches, swelling on the right side of her face, pain in her right jaw, and a clicking noise coming from her right temporomandibular joint. Jones expressed her belief that Isham was suffering from an oral infection and abscess, and that she would call in a prescription for Isham for Clindamycin, an antibiotic. It is undisputed that Jones did not have the legal authority to order any prescriptions. Jones obtained the prescription for Isham under the name of separate defendant Dr. Ahmed, for whom she had worked for several years. Ahmed frequently traveled to his home country of Pakistan and, at some point, left his prescription pad, stamp, and DEA number in the possession of Jones.[3] Ahmed also admitted that he allowed Jones "to occasionally call in a 'simple' prescription for her family, friends, and [Ahmed's] family members in [Ahmed's] absence." (Doc. 129-3, p. 45). The full extent and scope of Ahmed's arrangement with Jones is unclear. One pharmacist for BCH at the time, Mary Reese, knew that Jones "could use [Ahmed's] stamp, or call in a verbal order." (Doc. 129-5, p. 23). However, she provided few details on the extent of Jones's and Ahmed's arrangement and her knowledge of Jones's practices.

Isham's symptoms initially improved after taking the Clindamycin ordered by Jones, but the symptoms soon returned. By November 2010, Isham began experiencing a discharge from her right jaw. On January 25, 2011, Isham saw a nurse practitioner, who had authority to write prescriptions, for her symptoms. The nurse practitioner prescribed Clindamycin for her condition, and referred her to an oral maxillofacial surgeon. The surgeon eventually diagnosed Isham with

---

[3] As to Isham's prescription for Clindamycin specifically, Jones apparently used only Ahmed's name.

2

osteomyelitis. The surgeon ordered that Isham receive an antibiotic treatment, and Isham was administered Vancomycin intravenously. Isham was later treated by a different general surgeon for port catheter placement and an additional six-weeks of intravenous Vancomycin therapy to treat the osteomyelitis. Subsequently, the purulent discharge and facial swelling subsided, but Isham continued experiencing constant headaches, a clicking noise in her jaw, and blurred vision. She also learned that a portion of her jaw bone had become necrotic.

Isham alleges that, as a result of Jones prescription, her condition, although initially subdued, was actually aggravated in a subclinical state, eventually causing her to face, inter alia, multiple surgeries, lingering pain, and continuing clicking noises in her jaw. In bringing the instant action, Isham asserts claims for negligence against Jones, Ahmed, and BCH, including a claim for negligent supervision against BCH. Isham also asserts claims against each defendant for breach of fiduciary duty.

## II.     Legal Standard

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In deciding on a motion for summary judgment, the Court "must view the evidence in the light most favorable to the nonmoving party." *Sappington v. Skyjack, Inc.*, 512 F.3d 440, 445 (8th Cir. 2008) (internal quotations and citation omitted). Only facts "that might affect the outcome of the suit under the governing law" need be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he non-movant must make a sufficient showing on every essential element of its claim on which it bears the burden of proof." *P.H. v. School District of Kansas City, Missouri*, 265 F.3d 653, 658 (8th Cir. 2001) (quotation omitted). Essentially, "the non-moving party must be able to show sufficient probative evidence

that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Binkley v. Entergy Operations, Inc.,* 602 F.3d 928, 931 (8th Cir. 2010).

### III. Analysis

#### 1. BCH's Motion for Summary Judgment

##### a. Applicability of Arkansas Workers' Compensation Act

BCH first argues that this Court is without jurisdiction to decide the issues under the Arkansas Workers' Compensation Act, Ark. Code Ann. § 11-9-101, *et. seq.* ("AWCA") because Isham's claims are premised on duties owed to her by virtue of the parties' employment relationship. Specifically, BCH argues that Isham's claim that Nurse Jones was acting for the benefit of BCH in providing a prescription to Isham—ensuring Isham's health and her ability to continue working—brings into question whether or not the injury being claimed is governed by the AWCA. BCH then points out that Arkansas law clearly provides that, once the issue is raised, the AWCA Commission "has exclusive, original jurisdiction to determine the facts that establish jurisdiction, unless the facts are so one-sided that the issue is no longer a fact but one of law, such as an intentional tort." *Central Flying Service, Inc. v. Pulaski Cnty. Cir. Ct.*, 454 S.W.3d 716, 719 (Ark. 2015) (citations omitted).

As a threshold matter, all compensable injuries under the AWCA must arise "out of and in the course of employment." Ark. Code Ann. § 11-9-102(4)(A)(1). "A compensable injury does not include an injury which was inflicted upon the employee at a time when employment services were not being performed." *Ganus v. St. Bernard's Hospital, LLC*, 457 S.W.3d 683, 686 (Ark. Ct. App. 2015) (citing Ark. Code. Ann. 11-9-102(4)(B)(iii)). "Employment services" has been interpreted by the Arkansas Supreme Court to mean something that is generally required by an employer. *Pifer v. Single Source Transp.*, 69 S.W.3d 1, 3–4 (Ark. 2002). "The test is whether the

4

injury occurred within the time and space boundaries of the employment, when the employee was carrying out the employer's purpose or advancing the employer's interest directly or indirectly." *Id.* at 4 (quoting *White v. Georgia–Pacific Corp.,* 6 S.W.3d 98, 100 (Ark 1999)).

The Court finds that the facts of this case are so one-sided as to not implicate the AWCA. Isham was employed at BCH as a surgical scrub technician. While the underlying actions leading to Isham's alleged injury occurred within the time and space boundaries of her employment at BCH, she was not acting in furtherance of BCH's interest in talking to a coworker about her symptoms and eventually obtaining a prescription from that coworker. To find that Isham was carrying out BCH's purpose in seeking medical treatment that may have allowed her to continue working would be to hold that every employee of BCH seeking medical treatment is advancing their employer's interest. The Court declines to make such a finding. Moreover, even if the relevant inquiry should somehow focus on Jones, she also was not acting within the scope of her employment in providing a prescription to Isham for which she was not licensed or authorized to do. Accordingly, to the extent BCH's motion asserts that this Court is without jurisdiction to hear Isham's claims because of the AWCA, the motion is DENIED.

### b. Applicability of Medical Malpractice Act

BCH next argues that (1) all of Isham's claims are claims for "medical injury" under Arkansas's Medical Malpractice Act, Ark. Code Ann. § 16-114-201 *et. seq.* ("MMA"); (2) because the MMA was amended in 2013 to make it the "sole remedy with respect to any action for medical injury against a medical care provider[,]"[4] all of Isham's claims for medical injury should be subsumed into a single action for medical malpractice; and (3) Isham cannot recover under the MMA because she was never a patient.

---

[4] Ark. Code Ann. § 16-114-213.

First, in order to accept BCH's argument, the Court would need to find that the 2013 amendment applies retroactively to Isham's claims for injury that allegedly occurred from 2009–2011. "Generally, retroactivity is a matter of legislative intent, and unless it expressly states otherwise, [the Arkansas Supreme Court] presume[s] the legislature intends for its laws to apply only prospectively." *Steward v. Statler*, 266 S.W.3d 710, 713 (Ark. 2007) (citation omitted). "However, this rule does not ordinarily apply to procedural or remedial legislation." *Id*. Essentially, BCH argues that the 2013 amendment was remedial legislation to cure the expanding scope of liability under the previous version of the MMA. Because it will not affect the Court's ultimate decision, the Court will assume that applying the 2013 amendment retroactively is proper under Arkansas law to address BCH's remaining arguments.

Second, the Court must find that Isham suffered a "medical injury" as defined in Ark. Code Ann. § 16-114-201 in order for the claims to be properly subsumed into a single medical malpractice action. Section 16-114-201 defines medical injury as:

> any adverse consequences arising out of or sustained in the course of the **professional services being rendered by a medical care provider to a patient or resident**, whether resulting from negligence, error, or omission in the performance of such services; or from rendition of such services without informed consent or in breach of warranty or in violation of contract; or from failure to diagnose; or from premature abandonment of a patient or of a course of treatment; or from failure to properly maintain equipment or appliances necessary to the rendition of such services; or **otherwise arising out of or sustained in the course of such services.**
> (emphasis added)

BCH argues that Isham clearly suffered a medical injury because the Medical Malpractice Act includes any injury that is the result of (1) a professional service; (2) a doctor's treatment or order; or (3) a matter of medical science. *Paulino v. QHG of Springdale, Inc.*, 386 S.W.3d 462, 467 (Ark. 2012) (citation omitted). Specifically, BCH argues that according to Isham's complaint, Jones

6

was providing some "professional service" in prescribing Isham medication. The Court is disinclined to view an individual not licensed to practice medicine as providing a professional service when ordering unlawful prescriptions. More importantly, however, the definition of medical injury requires that any professional services be rendered "to a patient or resident."[5] Because of this, BCH's argument is self-defeating. BCH hinges its argument for precluding liability under this statute specifically on its contention that Isham was never a patient. The Court agrees that Isham was never a patient of BCH, Jones, or Ahmed; rather, she was an employee of BCH, and a co-worker and close friend of Jones. Therefore, while BCH is precluded from liability under the MMA, it is only because the MMA does not apply under the facts of this case. As the MMA does not apply, Isham's claims are properly construed as claims for negligence.[6] Accordingly, to the extent BCH's motion for summary judgment seeks dismissal of Isham's claims for failing to state a claim under the MMA, the motion should be DENIED.

### c. BCH's Vicarious Liability for Acts of Jones and/or Ahmed

"Under the doctrine of respondeat superior, an employer can be held liable for the tortious conduct of an employee or agent if there is evidence that the conduct occurred within the employee's scope of employment." *Medical Assur. Co., Inc. v. Castro*, 302 S.W.3d 592, 597 (Ark. 2009) (citation omitted). "The test for whether an employee is acting within the scope of [her]

---

[5] This language was added to the definition of medical injury as a result of the same 2013 amendments BCH argues should apply.

[6] The Court also questions whether any of the defendants in this action could be considered "medical care providers" under the statute as the definition in § 16-114-201 contemplates that any such provider was "lawfully providing professional medical care or services, or[, in the case of] an officer employee or agent thereof[, was] acting in the course and scope of employment" in providing such services. It is clear that Jones provided no lawful service in prescribing medications to Isham, and her doing so was not in the scope of her employment as a nurse. However, this issue need not be thoroughly addressed due to the Court's finding, and BCH's agreement, that Isham was not a patient of any defendant.

7

employment is whether the individual is carrying out the object and purpose of the enterprise, as opposed to acting exclusively in [her] own interest." *Cooper Clinic, P.A. v. Barnes*, 237 S.W.3d 87, 92–93 (Ark. 2006) (citation and internal quotation omitted). As stated above, the Court finds no evidence to show that Jones was acting in the scope of her employment as a nurse for BCH when providing a prescription to Isham. The matter was personal in nature between two close friends who happened to be at work when the actions took place. In that respect, Isham's argument that Jones was advancing BCH's interest in having a healthy employee in Isham is without merit. Accordingly, the Court finds that BCH is not vicariously liable for any negligence committed by Jones.

As to BCH's vicarious liability for Ahmed, there has been no evidence upon which this Court could find that Ahmed was anything but an independent contractor for BCH. Moreover, Isham seems to have abandoned any such argument in failing to address the matter at all in her response to BCH's motion for summary judgment. "An employer of an independent contractor is not liable for the independent contractor's torts which are committed in the performance of the contracted work." *Blankenship v. Overholt*, 786 S.W.2d 814, 815 (Ark. 1990). Therefore, the Court finds that BCH is not vicariously liable for any negligence committed by Ahmed. Accordingly, to the extent BCH seeks dismissal of Isham's claims insofar as they seek to hold BCH vicariously liable for the acts of Jones or Ahmed, the motion should be GRANTED.

      **d.**     **BCH's Direct Liability**

BCH argues that it had no knowledge of Jones writing prescriptions and had no duty to Isham directly under the circumstances. In addition, BCH has sought leave to file a supplemental motion for summary judgment (Doc. 176-1), in which it contends that because Jones has settled her claims with Isham, it cannot be held liable based solely on the acts of Jones. *See Rhodes v.*

*Progressive Cas. Ins. Co.*, 820 S.W.2d 293, 294–94 (Ark. Ct. App. 1991) ("[W]hen the servant is not liable, the master of whom was acting at the time should not be liable.").[7]

The Court recognizes the principle cited to by BCH. However, regardless of whether Jones has settled the claims against her, the complete rule in Arkansas is that "if there is independent actionable negligence on the part of the employer then [it] may be held liable even though the employee is [free from fault]." *Medical Assur. Co. Inc.*, 302 S.W.3d at 597 (quoting *Chicago, Rock Island & Pac. Railroad Co. v. Davis*, 397 S.W.2d 360, 361 (Ark. 1965)). Although BCH cannot be liable for the acts of Jones under the doctrine of respondeat superior, or vicarious liability, the Court finds that BCH may still be directly liable under Isham's theory of negligent supervision of Jones under Arkansas law. *See Regions Bank & Trust v. Stone Cnty. Skilled Nursing Facility, Inc.*, 49 S.W.3d 107, 115 (Ark. 2001); *Saine v. Comcast Cablevision of Ark., Inc.*, 126 S.W.3d 339, 324 (Ark. 2003).

For negligent supervision:

> the employer's liability rests upon proof that the employer knew or, through the exercise of ordinary care, should have known that the employee's conduct would subject third parties to an unreasonable risk of harm. As with any other negligence claim, a plaintiff must show that the employer's negligent supervision . . . of the employee was a proximate cause of the injury and that the harm to third parties was foreseeable. It is not necessary that the employer foresee the particular injury that occurred, but only that the employer reasonably foresee an appreciable risk of harm to others.

*Saine*, 126 S.W.3d at 342 (citations omitted). The record shows that Jones had ordered prescriptions in the past for, at least, herself and her husband that were filled at the BCH pharmacy. In addition, BCH's pharmacist, Mary Reese, knew that Jones had been given the authority to order

---

[7] BCH's motion for leave to file a supplemental motion for summary judgment (Doc. 176) is GRANTED and the supplemental motion for summary judgment (Doc. 176-1) has been considered as filed.

prescriptions while Ahmed was out of the country. The Court therefore finds that there are questions of fact remaining as to BCH's liability for negligent supervision. These questions include but are not necessarily limited to whether BCH should have known that Jones's conduct would present an unreasonable risk of harm to third parties.

However, negligent supervision in Arkansas is seemingly limited to the supervision of employees rather than independent contractors. *Paulino*, 386 S.W.3d at 468 (listing only negligent hiring as applicable to independent contractors). Accordingly, the claim for negligent supervision against BCH applies only as to the supervision of Jones. To the extent BCH seeks to dismiss Isham's claim for the negligent supervision of Jones, the motion should be DENIED.

### e. Isham's Claim for Breach of Fiduciary Duty

Isham asserts a claim against each defendant for breach of fiduciary duty; however, the Court is unable to discern, and Isham has provided no clarification on, how any party owed her a fiduciary duty that would be separate from a duty owed to her based on her negligence claims. Because the Court finds no basis for the breach of fiduciary duty claim, and finds that the possible claims are properly construed as claims for negligence, BCH's motion to dismiss Isham's claim for breach of fiduciary duty against it should be GRANTED.

### g. Expert Testimony of Dr. Whitesides

As a preliminary matter, BCH argues that the Court cannot consider Dr. Whitesides's expert report because it is unsworn. Therefore, BCH argues, the Court is limited to Dr. Whitesides's deposition testimony in considering the instant motion for summary judgment. However, the case BCH cites in support, *DG & G, Inc. v. Flexsol Pkg. Corp of Pompano Beach*, 576 F.3d 820 (8th Cir. 2009), sets forth a contrary rule. In *Flexsol*, the Eighth Circuit concluded that "subsequent verification or reaffirmation of an unsworn expert's report, either by affidavit or

deposition, allows the court to consider the unsworn expert's report on a motion for summary judgment." *Id.* at 826 (citing *Maytag Corp. v. Electrolux Home Prods, Inc.*, 448 F. Supp. 2d 1034, 1064 (N.D. Iowa 2006)).  Dr. Whitesides clearly and explicitly reaffirmed his opinions from the expert report during his deposition testimony, which BCH cites to.  Therefore, the Court finds it appropriate to consider both the deposition testimony and Dr. Whitesides's official expert report in ruling on the instant motion for summary judgment.

Substantively, BCH argues (1) that Dr. Whitesides is not qualified to give an expert opinion on the proximate cause of Isham's injuries and (2) that his opinions are too speculative.  Specifically, BCH argues that Dr. Whitesides has never treated a patient with Ewing's Sarcoma, all of his knowledge forming the basis of his opinion was obtained through research done specifically for this case, and that he is unable to eliminate other possible causes of Isham's injuries.[8]

Federal Rule of Evidence 702 "only requires that an expert possess knowledge, skill, experience, training, or education sufficient to assist the trier of fact, which is satisfied where expert testimony advances the trier of fact's understanding to any degree.  Gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility. . . .  Most courts have held that a physician with general knowledge may testify regarding medical issues that a specialist might treat in a clinical setting." *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100–1101 (8th Cir. 2006) (quotations and citation omitted).

It is established that Dr. Whitesides is an oral maxillofacial surgeon who based his opinions on his eighteen years of experience as a board certified surgeon, experience in dealing with

---

[8] BCH also argues that Dr. Whitesides's opinions do not meet certain requirements under the MMA.  In light of the Court's finding that that the MMA does not apply, these arguments are moot.

11

antibiotics, education in both of those areas, and review of relevant literature, all of which occurred after an extensive review of Isham's available medical records. As such, the Court finds him well-qualified to opine on the causation of an injury alleged to have occurred from the prescription of an antibiotic. The fact that Dr. Whitesides may not have extensive experience in dealing with the particularly rare form of cancer that Isham suffers from, or even the same level of experience in dealing with osteomyelitis as BCH's expert, is of no consequence in determining his qualifications as a whole. This is an instance where deficiencies in methodology or the extent of Dr. Whiteside's knowledge bears primarily on the weight to accord his testimony rather than on whether the fundamental reliability of his analysis qualifies him as an expert.

Next, "nothing in Rule 702, *Daubert* [*v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)], or its progeny requires that an expert resolve an ultimate issue of fact to a scientific absolute in order to be admissible." *Kudabeck v. Kroger Co.*, 338 F.3d 856, 861 (8th Cir. 2003) (quotations and citation omitted). While BCH presents its own highly-qualified expert's statements attacking the credibility of Dr. Whitesides's opinions on causation in its motion for summary judgment, the Court does not find that BCH's selected portions of Dr. Whitesides's deposition are sufficient proof to show that his opinions are wholly without merit. In that regard, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Accordingly, insofar as BCH seeks to find Dr. Whitesides's expert qualifications as lacking or his opinions deficient as a matter of law, that request is DENIED.

### h. Punitive Damages

BCH argues that it did not authorize or foresee the conduct of Jones, and that only its pharmacist, Mary Reese, had knowledge of the limited authority Ahmed had given Jones to call in

prescriptions. "Evidence is sufficient to support punitive damages if the party against whom such damages may be assessed, knew or ought to have known, in light of the surrounding circumstances, that the party's conduct would naturally and probably result in injury and that party continued such conduct in reckless disregard of the circumstances from which malice may be inferred." *D'Arbonne Const. Co. v. Foster*, 123 S.W.3d 894, 900–01 (Ark. 2003) (citation omitted). This includes when a "negligent party knew, or had reason to believe, that [its] act of negligence was about to inflict injury, and that it continued in its course with a conscious indifference to the consequences . . . ." *Id.* at 898.

The Court's analysis in regard to BCH's potential liability demonstrates that factual questions remain as to BCH's knowledge of the circumstances surrounding Jones's ordering of prescriptions, which are sufficient to preclude summary judgment on a claim for negligent supervision. Similarly, the Court finds that the extent of BCH's knowledge could potentially prove sufficient for punitive damages under Arkansas law. Specifically, if BCH knew that Jones was unlawfully ordering prescriptions, its failure to take corrective action could be considered a conscious disregard of the risk that Jones's practice of calling in unlawful prescriptions would lead to injury. Therefore, to the extent BCH's motion seeks to dismiss any claim for punitive damages based on its alleged negligence, the motion is DENIED.

        **2.**      **Ahmed Motion for Summary Judgment**

Ahmed argues that this is an action for medical malpractice and moves for summary judgment based on his contention that he did not owe Isham a legal duty because she was never his patient. Alternatively, Ahmed argues that Isham is not entitled to punitive damages. As explained above in regard to BCH's motion for summary judgment, this action does not involve a medical malpractice claim under the MMA, and the fact that Isham was never a patient of Ahmed

is therefore not determinative. Isham has set forth a cognizable claim for negligence based on Ahmed's arrangement for allowing Jones to use his information and documentation to order prescriptions. Questions of fact as to the extent and circumstances of that arrangement remain, and summary judgment is therefore improper.

Ahmed filed a supplement to his motion arguing that because Jones settled all claims against her, all claims against him should also be dismissed because he is only being held liable through the acts of Jones. However, regardless of any potential settlement between Jones and Isham, the Court finds that Isham has a proper claim for negligence against Ahmed directly based on whether Ahmed was negligent in allowing Jones to order prescriptions under his authority. Also, similar to BCH and as explained more thoroughly above, the extent of Ahmed's knowledge and the scope of his agreement could support a claim for punitive damages. Therefore, Ahmed's motion for summary judgment is DENIED insofar as it requests dismissal of Isham's claim for negligence and foreclosure of Isham's pursuit of punitive damages. However, insofar as Ahmed's motion seeks summary judgment on Isham's claim for breach of fiduciary duty, the Court finds it should be GRANTED for the same reasons BCH's motion for summary judgment was granted with respect to the same claim.

### IV. Motion to Bifurcate

Ahmed requests that the compensatory damages portion of this trial be bifurcated from any portion of the trial related to punitive damages.[9] "The decision of whether to isolate the punitive damages phase of the trial is within the sound discretion of the trial court." *Thorne v. Welk Inv., Inc.*, 197 F.3d 1205, 1213–14 (8th Cir. 1999). Under Arkansas law, if a plaintiff seeks punitive

---

[9] BCH has filed a notice to adopt Ahmed's motion to bifurcate the issue of punitive damages. The Court considers Ahmed's arguments for bifurcation as applicable to the case as a whole.

damages and either party requests bifurcation, the issues of compensatory and punitive damages must be bifurcated. Ark. Code Ann. § 16-55-211(a)(1)-(2). Likewise, under Arkansas law, "[e]vidence of the financial condition of the defendant and other evidence relevant only to punitive damages is not admissible with regard to any compensatory damages determination." Ark. Code. Ann. § 16-55-211(b). Arkansas procedural law is not binding on this Court, but a bifurcation of the issues in the instant matter would nonetheless prevent prejudice and comport with Arkansas law. Therefore, the Court finds that Ahmed's motion to bifurcate (Doc. 168)—which BCH adopted—should be GRANTED.

## V. Conclusion

**IT IS THEREFORE ORDERED** that BCH's motion for summary judgment (Doc. 129) is **GRANTED IN PART AND DENIED IN PART.** BCH's motion (Doc. 129) is **GRANTED** insofar as (1) Isham's claims for negligence against BCH premised on the vicarious liability of Jones or Ahmed and (2) Isham's claim for breach of fiduciary duty against BCH are each **DISMISSED WITH PREJUDICE.** The motion (Doc. 129) is **DENIED** insofar as it seeks: (1) dismissal of Isham's claims based on the applicability of the Arkansas Workers' Compensation Act; (2) dismissal of Isham's claims based on the applicability of the Arkansas Medical Malpractice Act and the lack of a physician-patient relationships; (3) dismissal of Isham's claim for negligent supervision of Jones; (4) dismissal of Isham's claims based on inadequate expert testimony; (5) to prevent the possibility of imposing punitive damages; and (6) for the Court to find Isham's expert witness, Dr. Whitesides, unqualified to give his expert opinion in this case or his opinion to be deficient as a matter of law.

**IT IS FURTHER ORDERED** that Ahmed's motion for summary judgment (Doc. 103) is **GRANTED IN PART AND DENIED IN PART**. Ahmed's motion (Doc. 103) is **GRANTED**

insofar as Isham's claim for breach of fiduciary duty is **DISMISSED WITH PREJUDICE**. The motion (Doc. 103) is **DENIED** insofar as it seeks (1) dismissal of Isham's claims for negligence based on Ahmed providing Jones with the authority to order prescriptions and (2) to prevent the possibility of imposing punitive damages.

    **IT IS FURTHER ORDERED** that Ahmed's motion to bifurcate (Doc. 168) is **GRANTED**. Any portion of the trial concerning punitive damages will be bifurcated from proceedings concerning compensatory damages.

    **IT IS FURTHER ORDERED** that BCH's motion for leave (Doc. 176) to file a supplemental motion for summary judgment is **GRANTED**. The supplemental motion (Doc. 176-1) has been considered as filed.

    **IT IS SO ORDERED** this 30th day of June, 2015.

*/s/ P. K. Holmes, III*
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE